IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SARAH THRUL f/k/a SARAH TEWALT )
)
Plaintiff, )
-vs.- )
) Civil Action No:3:15CV623 JAG
)
LANDMARK PROPERTY SERVICES, )
INC., et al. )
)
Defendants )

## MTG PROCESS SERVERS, LLC'S RESPONSE TO PLAINTIFF'S RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE

COMES NOW M.T.G PROCESS SERVERS, LLC (hereinafter "M.T.G."), by and through undersigned counsel, and pursuant to this Court's *Order to Show Cause*, files this *Response to Plaintiff's Response to Order to Show Cause* and states as follows:

## I.    STATEMENT OF THE CASE

On October 19, 2015, Plaintiff, Sarah Thrul (hereinafter "Ms. Thrul") brought this cause of action alleging Fraud, Abuse of Process, violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1962, *et seq.,* the Virginia Consumer Protection Act of 1977 (hereinafter "VCPA"), VA Code § 59.1-196, and Virginia Code 8.01-271.1 against Landmark Property Services, Inc., (hereinafter "Landmark") Renaissance Mayfair, LP (hereinafter "Renaissance") for attempting to collect what they believed to be their own debt through filing an Unlawful Detainer Actions and violations of FDCPA and VCPA against M.T.G. Process Servers, LLC (hereinafter "M.T.G.") for serving the Unlawful Detainer Action. [ECF 1].

On November 19, 2015, M.T.G. filed its *Motion(s) to Dismiss for Failure to State a Claim* [ECF 3]. On December 3, 2015, Ms. Thrul filed her *First Amended Complaint* [ECF 7]

removed M.T.G. as a defendant, then filed her *Opposition to M.T.G's Motion to Dismiss* [ECF 8] with new allegations that were contradictory and mutually exclusive to those in her *Complaint*, to wit: Ms. Thrul accused M.T.G. of committing a fraud upon the court by engaging in "sewer service," citing cases not relevant, and blatantly misstating the law.  The following day, M.T.G. filed its *Reply* [ECF 9] to Ms. Thrul's false and defamatory allegations, misstatements of law and fact and sanctionable conduct.

On December 14, 2015, this Court granted M.T.G.'s motion to dismiss, with prejudice, and ordered Ms. Thrul to show cause with respect to attorney's fees why her conduct in filing the Complaint [did] not violate Fed.R.Civ.P. 11, why 28 U.S.C. § 1927 should not apply to her conduct and why pursuant to 15 U.S.C. § 1692k(a)(3) her conduct [did] not qualify as bad faith or harassment. [ECF16] On December 22, 2015, Ms. Thrul filed her *Response to Order Show Cause* [ECF 22] and consistent with her *Complaint* and *Opposition* that lacked any foundation in fact or law, she maintained the demonstrably false and defamatory allegations against M.T.G., made contradictory and mutually exclusive allegations to those pled, as well as blatant misstatements of law.  Her persistent actions were willful and with knowledge of their untruthfulness and with conscious disregard of M.T.G.'s rights, and provide this Court ample justification to award attorney's fees and costs to M.T.G. as well as sanctions for the bad faith and harassing conduct of Ms. Thrul and her counsel as further shown herein.

## II.    M.T.G. SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS FOR HAVING TO DEFEND A GROUNDLESS LAWSUIT AND RESPOND TO DEFAMATORY PLEADINGS PURSUANT TO FED.R.CIV.P 11.

1.    Ms. Thrul by and through her counsel, filed a baseless lawsuit that had absolutely no foundation in fact or law: process servers such as M.T.G. were expressly excluded by the very statutes she wanted this Court to enforce.  No reasonable attorney in like circumstances could

have believed these actions to be legally justified; and certainly not a law firm that includes the links to FDCPA and VCPA statutes on its own website. Therefore, her complaint was filed in violation of Fed.R.Civ.P 11(b) and M.T.G., as the prevailing party, should be awarded its reasonable expenses, including attorney's fees and costs for having to defend and respond to the bad faith and harassing actions in this case as provided for in 15 U.S.C. § 1692k(a)(3). (Exhibit A).

**III.   28 U.S.C. §1927 SANCTIONS SHOULD BE IMPOSED FOR THE FALSE AND DEFAMATORY STATEMENTS PUBLISHED ABOUT M.T.G. AFTER IT WAS NO LONGER A PARTY THEREBY MULTIPLYING THE PROCEEDINGS UNREASONABLY AND VEXATIOUSLY.**

2.     Ms. Thrul, by and through her very experienced consumer litigation counsel, removed M.T.G. as a defendant, <u>then</u> filed her *Opposition* to *M.T.G.s Motion to Dismiss for Failure to State a Claim.* In her *Opposition* and without any legal or factual justification, Ms. Thrul and her counsel filed demonstrably false and defamatory allegations, injuring M.T.G's honorable reputation; thereby multiplying the proceedings unreasonably and vexatiously. The case against M.T.G. was frivolously filed, in express violation of the clear and unambiguous FDCPA and VCPA statutes.  Then in reckless disregard of M.T.G.'s reputation, Ms. Thrul by and through her counsel maintained the knowingly false accusations and misstatements of the law in their *Opposition* and *Response* as set forth herein.

**IV.   MS. THRUL AND HER COUNSEL'S ACTIONS WERE KNOWINGLY FALSE AND DEFAMATORY - M.T.G.'S HONEST AND DEPENDABLE REPUTATION SHOULD BE RESTORED**

3.     Ms. Thrul clearly understands the value of one's reputation.  She believed she was wrongfully haled into court for something she didn't do (sign a lease). She retained a law firm

specializing in consumer protection litigation[1] and sought actual, statutory, and punitive damages [and treble damages], costs and attorneys' fees against Renaissance, Landmark[2] and M.T.G., asking this Court to find all three defendants had violated the FDCPA and VCPA and also that Landmark and Renaissance had committed Fraud, and Abuse of Process. (ECF 1 at ¶¶1, 34-74).

4.      Ms. Thrul's counsel knew the value of an untarnished reputation of not only their client, but themselves, when they stated: "This Court should know that neither of [Ms. Thrul's] counsel has ever been sanctioned.  This matter is the first of its kind."  (ECF 22 at pg. 1, fn 1).  Ms. Thrul's counsel also knew their duties to the Court, asserting "clear violations of Va. Code § 8.01-271.1" in their Complaint.  (ECF 1 at ¶¶14, 67).

5.      Most importantly, Ms. Thrul and her counsel expressly knew M.T.G. valued its good and honorable reputation, noting in her *Complaint* that M.T.G. "promoted itself on its website as [having] staff [that are] 'hard-working, dependable, and honest.'" (ECF 1 at ¶¶20-22).  As such, Ms. Thrul's actions toward M.T.G. in this matter were baseless and unwarranted, pursued in bad faith, and harassing and defamatory.  Sanctions are appropriate.

## V.      M.T.G. PROCESS SERVER LLC'S ACTIONS COMPLIED WITH THE LAWS OF THE SUPREME COURT OF VIRGINIA AND THERE IS NO EVIDENCE TO THE CONTRARY

6.      Service of Process within Virginia is governed by the Rules of the Supreme Court: Va. Code Ann. § 8.01-285 *et seq*, (2007 & Supp. 2012).  There is absolutely nothing in the Va. Code, statutes or case law that requires M.T.G. to do more than what it did.  As Ms. Thrul stated in her

---

[1] Consumer Litigation Associates, P.C.  *"Our firm has successfully litigated hundreds of cases for consumers in federal courts across the nation."* See http://www.clalegal.com/

[2] Landmark Property Services, Inc., has been in business since 2002, Renaissance Mayfair, LP, since 2009 and according to Pacer.gov, this is the first and to date, only FDCPA Complaint filed against them.

Complaint, M.T.G. retrieved the Summons for Unlawful Detainer Action from the Virginia

Beach General District Court, and posted service pursuant to the information filed by Landmark.

## VI.   DISCUSSION OF AUTHORITY

### a.   RULE 11(c)(3)

7.     Under the Federal Rules of Civil Procedure 11(c)(3), "the court may order an attorney, law

firm, or party to show cause why conduct specifically described in the order has not violated

Rule 11(b)."  Because a "*sua sponte* show cause order deprives a lawyer against whom it is

directed of the mandatory twenty-one day 'safe harbor' provision provided by the 1993

amendments to Rule 11…a court is obligated to use extra care in imposing sanctions on

offending lawyers." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (citing

*United Nat'l Ins. Co. v. R&D Latex Corp*., 242 F.3d 1102, 1115-16 (9th Cir. 2001) (noting that

*sua sponte* Rule 11 sanctions for allegedly baseless legal claims are to be examined closely as

there is no 'safe harbor' available).

8.     In the Fourth Circuit, "when an attorney 'maintain[s] a legal position to a court'…under

'a standard of objective reasonableness, [if] it can be said that a reasonable attorney in like

circumstances could not have believed his actions to be legally justified,' the court may impose

Rule 11(b) sanctions" *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515 (D. Md. 2014) citing *ATS*

*Int'l Servs., Inc. v. Kousa Int'l, LLC,* No. RDB-12-2525, 2014 WL 1407290, at *8 (D.Md. Apr.

10, 2014) (quoting *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 153 (4th Cir. 2002) (quoting

*In re Sargent*, 136 F.3d 349, 352 (4th Cir.1998))).  The way in which a claim is pled does not

bear on Rule 11 sanctions; *only the absence of any basis, legal or factual, is sanctionable*.

[*Hunter*, 281 F.3d] at 153. Instead, Rule 11 attempts only to discourage wasteful filing of

"groundless lawsuits." *Id.* Where a party violates Rule 11(b), Rule 11(c) allows the court to

impose sanctions which may include awarding "the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion(s)." Fed.R.Civ.Pro. 11(c)(1)-(2).

9.  In *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 389-90, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the district court granted the defendants' Rule 11 motion more than three years after the plaintiff had voluntarily dismissed the case, stating: "a voluntary dismissal does not expunge the Rule 11 violation," and "a court must have the authority to consider whether there has been a violation of [Rule 11] regardless of the dismissal of the underlying action." *Id.* at 395, 110 S.Ct. 2447. The Supreme Court noted that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending" and that "[t]he filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction." *Id.* at 395, 398, 110 S.Ct. 2447.

10.  The Fourth Circuit said plainly: "Factual allegations fail to satisfy Rule 11(b)(3) when they are 'unsupported by any information obtained prior to filing.'" *Morris v. Wachovia Securities, Inc.,* 448 F.3d 268, 277 (4th Cir. 2006). "The legal argument must have absolutely no chance of success under the existing precedent" to contravene the rule. *Id.* "[A] complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." *In re Kunstler,* 914 F.2d 505, 516 (4th Cir. 1990). This rule also empowers the district court to sanction a party or lawyer for "insisting [on] a position after it is no longer tenable." Fed.R.Civ.P. 11(b) Advisory Committee's Notes to 1993 Amendments. "As the 'violation of Rule 11 is complete when the paper is filed,' a voluntary dismissal does not expunge the Rule 11 violation." *Cooter,* 110 S.Ct. at 2455 (*quoting Szabo Food Serv., Inc. v.*

*Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988)).

11.   The court awarded sanctions in *Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, Civil Action No. 2: 07cv530 (E.D. Va. Aug. 20, 2009) stating: "[P]laintiff made factual contentions that were not only utterly misleading and unsupported by record evidence but, in some cases, outright misrepresentations…Plaintiff also continued advocating its dubious fraud theories despite the lack of any factual basis whatsoever. Such conduct by plaintiff's counsel violated Rule 11(b), and merits sanction," citing *Brubaker v. City of Richmond,* 943 F.2d 1363, at 1372 25 (4th Cir.1991).

12.   As the court in *Guidry v. Clare*, 442 F. Supp. 2d 282, 289 (E.D. Va. 2006) stated, "It is not enough that the injured party subjectively believes that a lawsuit was brought to harass or to focus negative publicity on the injured party; instead, such improper purposes must be ascertained from the lack of a factual or legal basis for the lawsuit," citing *Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina,* 789 F.2d 1056, 1060 (4th Cir. 1986)

   **b.  28 U.S.C. § 1927**

13.   28 U.S.C. § 1927 provides for the imposition of sanctions on attorneys who "multiply proceedings" and thus abuse the court process. *DeBauche v. Trani,* 191 F.3d 499, 511 (4th Cir. 1999).  An attorney cannot be sanctioned under § 1927 just because the claim ultimately is found meritless. *Id*. Instead, he must have "multiplie[d] the proceedings . . . unreasonably and vexatiously." *Id*. (internal quotation marks and citation omitted). Bad faith on the part of the attorney is a precondition to sanctions under the statute. *Equal Employment Opportunity Comm'n v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012). The Fourth Circuit has found bad faith where an attorney brought a claim under circumstances indicating he knew it had no reasonable basis, granting sanctions against Plaintiffs pursuant to 15 U.S.C.A. § 1692k(a)(3) and against

their attorney pursuant to Fed.R.Civ.P. 11 and 28 U.S.C.A. § 1927. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 (4th Cir. 1999) concluding "the case was brought in bad faith and for the purposes of harassment of the Defendants…[as it was] utterly without factual foundation." *Id.*

    **c.   15 U.S.C. § 1692k(a)(3)**

14.    A prevailing party in an FDCPA action may pursue an award of attorney's fees under either the FDCPA [15 U.S.C. § 1692k(a)(3)] or under 28 U.S.C. § 1927. *See Marx v. General Revenue Corp.*[3]*,* 133 S. Ct. 1166, at 1175-76 568 U.S. 2, 185 L. Ed. 2d 242 (2013) (explaining that "[i]t is undisputed that [the FDCPA's attorney's fee provision] leaves the background rules for attorney's fees intact" and that § 1692k(a)(3) "is best read as codifying a court's pre-existing authority to award both attorney's fees and costs").

15.    The FDCPA provides "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). Whether a lawsuit is brought for improper purposes "must be ascertained from the lack of a factual or legal basis for the lawsuit. . . . <u>Repeated filings</u>, the <u>outrageous nature of the claims</u> made, or a <u>signer's experience in a particular area of law</u>, <u>under which baseless claims have been made</u>, are all appropriate indicators of an improper purpose." (Emphasis supplied) *Smith v.*

---

[3] This decision resolved the conflict among the Circuit Courts.  The Supreme Court found that § 1692k(a)(3) does not displace a district court's discretions to award costs to the prevailing party.  As a result, a defendant can recover its costs in defending against an FDCPA claim***, without a showing of bad faith and purpose of harassment on the part of the Plaintiff***. Prior to the Supreme Court's ruling in Marx, the Fourth, Sixth, Seventh and Tenth Circuits have ruled that good faith by the plaintiff in filing suit under the FDCPA, by itself, cannot defeat a request for costs under Fed. R. Civ. P. 54(d)(1). *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994) ("the mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant"); *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir. 1999) (a party's good faith, standing alone, is an insufficient basis for refusing to assess costs against that party)

*Berkeley*, No. 3: 09-CV-554 (E.D. Va. Dec. 22, 2010), citing *Guidry v. Clare*, 442 F. Supp. 2d

282, 289 (E.D. Va. 2006).  Such is the situation in the instant case.

16.    In order to prevail there must be evidence that the plaintiff knew that his claim was

meritless and that plaintiff pursued his claims with the purpose of harassing the defendant. See

*Jacobson v. Healthcare Financial Services, Inc.*, 2006 WL 1528959 at * 6 (E.D.N.Y. June 6,

2006) (granting Defendant's request for costs and attorney's fees pursuant to 1692k(a)(3) where

the plaintiff's "mistaken belief that the alleged violation of the statute, arrived at merely by a

strained construction of [alleged facts], constitutes per se harassment…").

17.    The hallmark of a bad-faith lawsuit is one "where the suit is so completely without hope of

succeeding that the court can infer that the plaintiff brought the suit to harass . . . rather than to

obtain a favorable judgment." *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985).

**VII.    INEFFECTIVE SERVICE OF PROCESS WITHOUT A "PERJURED
         AFFIDAVIT" IS NOT A FDCPA VIOLATION – M.T.G. DID NOT FILE A
         PERJURED AFFIDAVIT**

18.    In a fact pattern nearly identical to the instant case, the court stated: "The failure to serve

plaintiff at the correct address rendered the judgment null, which was effectuated by defendant

filing the Satisfaction of Judgment acknowledging full and complete satisfaction of judgment

and refunding [what] defendant had garnished from plaintiff's wages…But these allegations do

not state claim under the FDCPA for engaging in harassing, oppressive or abusive conduct in

violation of 15 U.S.C. § 1692d, using false, deceptive or misleading representations or means in

violation of 15 U.S.C. § 1692e, or using unfair or unconscionable means in violation of 15

U.S.C. § 1692f…Plaintiff does not allege that defendant instructed the Sheriff to serve him at the

incorrect address *for the purpose* of obtaining a default judgment fraudulently or that defendant

filed the Journal Entry of Judgment certifying that plaintiff had been served with process when it

*actually* knew he was not served. (emphasis in original) As such, plaintiff has not alleged a claim for violation of the FDCPA under the 'sewer service' theory recognized by this line of cases." *Briscoe v. Cohen, McNeile & Pappas, PC*, No. 14-2146-DDC-KGG (D. Kan. Oct. 1, 2014).   See also *Moore v. Fein, Such, Kahn & Shepard, P.C.*, No. 12-1157 (JLL), 2012 WL 3945539 (D.N.J. June 13, 2012) (no case law supporting [the] contention that incorrect service of process, the institution of a levy in accordance with the execution of default judgment, or the incurring of a bank fee resulting from such a levy constitute 'unfair and unconscionable' conduct under [FDCPA]) (citing *Mandelas v. Gordon*, 785 F. Supp. 2d at 956-57 (W.D. Wash. 2011); *Dillon v. Riffel-Kuhlmann*, 574 F. Supp. 2d 1221, 1223-24 (D. Kan. 2008); *Pierce v. Steven T. Rosso, P.A.*, No. Civ. 01-1244 DSDJMM, 2001 WL 34624006 (D. Minn. Dec. 21, 2001)), *Scott v. Kelkris Associates, Inc.*, No. CIV. 2:10-1654 WBS DAD, 2012 WL 996578 (E.D. Cal. Mar. 23, 2012) (Merely failing to serve process in a debt collection action does not establish a violation of the FDCPA.) *Curto v. Palisades Collection, LLC*, No. 07-CV-529 (S) (W.D.N.Y. Oct. 23, 2011). (The Court finds no support for the proposition that pursuing a collection action without serving the debtor constitutes a violation of the FDCPA) *Keylard v. Mueller Anderson, PC*, No. 13 C 2468 (N.D. Ill. Aug. 22, 2013).

19.   Ineffective service of process does not violate FDCPA.  It requires "failing to serve process and perjuring affidavits of service [to] violate the FDCPA." (emphasis added) See also *Bowens v. LR Credit 10 LLC, 2011 U.S. Dist. Lexis 143737, at \*12-13 (W.D.N.Y. Dec. 5, 2011) citing Spiegel v. Judicial Attorney Servs., Inc.,* No. 09 C 7163, 2011 WL 382809, at \*1 (N.D. Ill. Feb. 1, 2011); *Sykes v. Mel Harris & Associates, LLC., 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010)*

## VIII.   EVIDENCE OF BAD FAITH AND HARASSMENT WARRANTING SANCTIONS AND AN AWARD OF ATTORNEY'S FEES AND COSTS TO M.T.G.

**a. Filing the Complaint that lacked any basis, legal or factual, against M.T.G., then contradicting herself in the Virginia Beach General District Court**

20.   Prior to filing the Complaint, Ms. Thrul's counsel purportedly reviewed the requirements of Va. Code § 8.01-271.1, documents filed in the Virginia Beach General District Court and M.T.G's website.  Ms. Thrul's counsel may have avoided filing the baseless lawsuit against M.T.G. had she reviewed her own law firm's website that conveniently links directly to the FDCPA and VCPA statutes: See www.clalegal.com/law-library

> The term "debt collector" does not include "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt; 15 U.S.C. § 1692a(6)(D).
>
> Virginia Consumer Protection Act, Va. Code §59.1-200, *et seq.* holds in part: §59.1-199 – Exclusions. Nothing in this chapter shall apply to:
>
> C. Those aspects of a consumer transaction which are regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq. (See above for exclusions).

21.   Notably, Ms. Thrul, by and through her counsel alleged ***"Without even confirming that Plaintiff had a legal obligation***, and in complete violation of Virginia Code 8.01-271.1, Defendant Landmark [wrongfully haled Ms. Thrul into Court] attempted to collect the unpaid amount [sic] rent amount" (ECF 1 at ¶14) (Emphasis supplied).  Yet what they did to M.T.G. was far worse; Ms. Thrul not only haled M.T.G. into court despite the express language in the FDCPA and VCPA statutes that excludes process servers, she then repeatedly, without any factual or legal justification, falsely accuses them of perpetrating a fraud upon the court.

22.   Remarkably, on November 19, 2015, in the Virginia Beach General District Court, Ms. Thrul's *Motion to Set Aside Default Judgment*[4] cites the reason for her motion is "a void judgment" and not "a fraud upon the court" for "sewer service" as maintained in this Court.

---

[4] The Court may take judicial notice of public records from other proceedings. *Shackleford v. Com.*, 547 S.E.2d 899, 262 Va. 196 (2001). "A trial court may take judicial notice of those facts that are either (1) so

23.     Yet, despite all the legal and factual information that was readily available to Ms. Thrul and her counsel, the ten (10) page Complaint, seeking nine (9) counts against three (3) defendants, consisted of seventy four (74) paragraphs.  Ms. Thrul's allegations often contradicted each other and negated the basic elements needed to support her claims, in particular, those claims against M.T.G.  Under the facts she expressly averred, it was factually and legally unsupportable that M.T.G. violated any rules, statutes or laws as M.T.G.'s actions complied with the Va. Code. Ann. § 8.01-285 *et seq*., and are expressly excluded in the FDCPA and VCPA statutes.

24.     Ms. Thrul also averred she "never lived at the Renaissance (ECF 1 at ¶10); yet she asserted to this Court yet another demonstrably false allegation against M.T.G.:

> M.T.G. 'served' Plaintiff by posting the summons on the door of the Renaissance…on the front door of the apartment, and contain[ed] Plaintiff's full, unredacted social security number... (ECF 1 at ¶¶ 19, 29 and 30).

25.     However, the Virginia Beach General District Court records evidence the only document(s) served and/or handled by M.T.G. was the *Summons for Unlawful Detainer* and it <u>does not include Plaintiff's social security number anywhere on the document</u>. (Exhibit B).  Ms. Thrul did not file this cause of action until almost a year after the Summons for Unlawful Detainer was issued allowing ample time for this document to be reviewed before making the demonstrably false allegation regarding M.T.G.

### b.   The Fabricated and Defamatory Claims and Intentional Misstatements of Law Ms. Thrul filed in her Opposition to M.T.G.'s Motion to Dismiss

26.     As Ms. Thrul outlined in her *Complaint*: M.T.G. simply retrieved Landmark's *Summons for Unlawful Detainer* from the Virginia Beach General District Court and served it pursuant to

---

`generally known' within the jurisdiction or (2) so `easily ascertainable' by reference to reliable sources that reasonably informed people in the community would not regard them as reasonably subject to dispute" citing *Taylor v. Commonwealth*, 28 Va.App. 1, 7-8, 502 S.E.2d 113, 116 (1998) (en banc) (citations omitted).

Va. Code. Ann. § 8.01-285 *et seq*., it had no information beyond what was on the Summons nor did it verify what Landmark filed with the court:

> MTG's hard-working, dependable, and honest staff did not undertake any effort to determine…where Plaintiff actually lived before attempting to serve her by "posting service." (ECF 1 at ¶14).

> At the time it attempted service upon the Plaintiff…Defendant MTG had no actual information as to whether the address that it used when posting service was genuinely Plaintiff's place of abode. (ECF 1 at ¶27).

27.    Remarkably, fourteen (14) days after Ms. Thrul filed her Motion in the Virginia Beach General District Court, citing a "<u>void judgment</u>" and not "<u>a fraud upon the court,</u>" she filed her *First Amended Complaint* [ECF 7] dismissing M.T.G., and then filed her *Opposition* [ECF 8] accusing M.T.G., no longer a defendant, of committing "sewer service" i.e., filing knowingly false affidavits with the court – committing a fraud upon the court(s).  But she doesn't stop there, she continues making factual misstatements of the FDCPA and VCPA statutes:

> MTG asserts that it is exempt from both FDCPA and also (inexplicably) the FCPA because it is a private process server.   Charitably…**the Defendant is mistaken in both regards**.   The VCPA **contains no such 'express exclusions' for process servers**.   (ECF 8 at Page 1)

> Further, the exclusions found within the FDCPA does [sic] not apply to claims where, as here, the Plaintiff alleges that the Defendant actually did not serve process.   Courts have sometimes referred to this as **'sewer service'** and allowed FDCPA claims against such entities claiming the exemption for process servers to proceed.  *Sykes*[5] *v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010); *Spiegel*[6] *v. Judicial Attorney Servs. Inc.*, No. 09C 7163, 2011 WL 382809, at *1 (N.D. Ill. Feb. 1, 2011); *Holmes*[7] *v. Electronic Document Processing, Inc.*, 966 F. Supp. 2d 925 (N.D. Cal. 2013). (*Id*.) (Emphasis supplied.)

---

[5] In *Sykes*, "debt-buying company, a law firm, a process service company, engaged in a "massive scheme" to fraudulently obtain default judgments …<u>**sewer service purposefully ensures that a party is never served**</u>…"

[6] In *Spiegel*, "[if Spiegel's allegations were true, the defendants' actions would have **taken them beyond their role as process servers and rendered them ineligible for the exception**].

[7] In *Holmes,* they failed to serve [personally] …and instead provide[d] a **perjured Proof of Service of Summons**. Rather than serving Holmes **personally**, Defendants wedged the Summons and Complaint under Holmes's front door…the *Proof of Service of Summons* describes the person [personally] served as a female Caucasian, 50-years-

28.     Ms. Thrul and her counsel have put themselves in an irreconcilable situation: they assert (correctly) to this Court that M.T.G. "had no actual information as to whether the address that it used when posting service was genuinely Plaintiff's place of abode" (ECF 1 at ¶27), and accordingly file for a Void Judgment in the Virginia General District Court (Exhibit C). Then, assert contradictory facts to this Court in their *Opposition*: that M.T.G. perpetrated fraud upon the court by filing knowingly false affidavit[s], thus engaging in "sewer service." However, Ms. Thrul and her counsel are willing to overlook M.T.G's "sewer service (fraud upon the court)…in the interests of judicial economy." (ECF 8 at pg. 2, ECF 22 at fn. 7.)

29.     There is a vast factual and legal difference between alleged ineffective service and fraudulent "sewer service." Yet, Ms. Thrul and her very experienced consumer litigation counsel repeatedly and intentionally attempt to mislead this Court in what can only be bad faith and harassment, and certainly defamation as to M.T.G.  The Fourth Circuit permits an inference of bad faith or intent to mislead the court where a party continues to assert factually contradictory positions which "indicate that [party's] position was deliberately and not inadvertently taken." *King v. Herbert J. Thomas Memorial Hosp.,* 159 F.3d 192, 196 -198 (4th Cir. 1998); (In cases where courts infer bad faith…the inconsistent positions tend to be stark and factually obvious: a person is able to do a job or is not able to do a job; a person knows of a legal claim or does not know of a legal claim…bad faith is inferred because the different factual positions are so obviously contradictory that the party could only be asserting them intending to mislead the court.) *Samsung Electronics Co., LTD v. Nvidia Corporation*, Civil Action No. 3: 14cv757 (E.D. Va. Dec. 16, 2015).  "…the courts apply judicial estoppel to prevent a party from benefiting

---

old, with brown hair and brown eyes, 5 feet 8 inches tall, and weighing 165 pounds. However, Holmes is 62-years-old, with blond hair and blue eyes, and weighs 125 pounds."

itself by maintaining mutually inconsistent positions regarding a particular situation…the doctrine is invoked to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the [courts] to gain unfair advantage'" *King v. Herbert J. Thomas Mem. Hosp.*, 159 F.3d 192 (4th Cir. 1998) citing *Lowery v. Stovall*, 92 F.3d 223, 225 (4th Cir.1996), cert. denied, 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997).

30.     In the instant case, the Court need not infer anything, it is all in the pleadings: Ms. Thrul first asserts M.T.G., <u>had no actual information</u> about where she lived. Then Ms. Thrul told this Court M.T.G. <u>did have actual information</u> about where she lived and engaged in "sewer service." Ms. Thrul by and through her same counsel in this case told the Virginia Beach General District Court, <u>there was no fraud upon the court</u>.   Yet, in her Response to this Court's *Order to Show Cause*, Ms. Thrul by and through her counsel assert M.T.G. "<u>falsely swore, or implicitly swore that it knew [Ms. Thrul] did not live [at the last known address</u> used by Landmark] and engaged in "sewer service."

31.     Ms. Thrul may or may not be a sophisticated litigant but it is implausible that Ms. Thrul's counsel,[8] a member of a firm specializing in Consumer protection does not know the difference between ineffective service of process and fraudulent "sewer service." It is also implausible that Ms. Thrul's counsel would so cavalierly violate her duties as an officer of the Court, and voluntarily dismiss M.T.G. who they claim is perpetrating fraud upon the court.  The general duty to preserve the integrity of the judicial process was identified in *Hazel-Atlas Glass Co. v.*

---

[8] "Consumer Litigation Associates is a member of the National Association of Consumer Advocates (NACA).  Our attorneys are experienced federal litigators practicing solely in the field of consumer protection…The firm has successfully litigated hundreds of cases against the credit reporting agencies, banks, credit card companies and mortgage companies in federal courts across the nation for consumers… CLA's specific focus over the last decade has been the enforcement of consumer rights under the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and related other federal consumer protection statutes." See http://www.clalegal.com/our-firm

*Hartford-Empire Co*., 322 U.S. 238, 245-46 64 S.Ct. 997, 88 L.Ed. 1250 (1944) and is the

United States Supreme Court's leading "fraud upon the court" decision:

> Here, . . .we find a deliberately planned and carefully executed scheme to defraud [the Court]…This matter does not concern only private parties. There are issues of great moment to the public…tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

### c. The Response to Order to Show Cause maintaining the false and defamatory statements and the legally unsupportable assertions

32.   M.T.G. believed that upon this Court's *Order to Show Cause*, Ms. Thrul and her counsel

would reconsider their misstatements of law, and false and defamatory statements that are now

public record and use their *Response* as the opportunity to step back from their spurious positions

and rehabilitate M.T.G.'s reputation.  M.T.G. was sorely mistaken.  Had Ms. Thrul's actions in

this matter been motivated by any reason other than bad faith or to harass, she would have taken

Justice Jackson's counsel: "I see no reason why I should be consciously wrong today because I

was unconsciously wrong yesterday." *Massachusetts v. United States,* 333 U.S. 611, 639-640, 68

S.Ct. 747, 92 L.Ed. 968 (1948) (dissenting opinion).  *Jerman v. Carlisle, McNellie, Rini, Kramer*

*& Ulrich, LPA,* 559 U.S. 573, 600 (2010) ("[A]n attorney's ethical duty to advance the interests

of his client is limited by an equally solemn duty to comply with the law and the standards of

professional conduct.")

33.   Ms. Thrul's *Response* cites nine (9) cases dealing specifically with "sewer service,"[9] an

allegation raised for the first time in their *Opposition*.  Therefore, pursuant to Fed.R.Civ.P.

---

[9] *Freeman v. ABC Legal Services, Inc.,* 827 F. Supp. 2d 1065, 1073 (N.D. Cal 2011); *Romea v. Heilberger & Associates,* 163 F. 3d 111, 117 (2d Cir. 1998*); Long. V. Nationwide Legal File & Serve, Inc*.  213 WL 5219053, at *15 (N.D. Cal Sep 17, 2013); *Sanchez v. Abderrahamn,* 2014 WL 4919153 at *4 (E.D.N.Y. Aug. 12, 2014); *Sykes v. Mel Harris & Associates, LLC.*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010); *Bowens v. LR Credit 10 LLC,* 2011 U.S.

8(a)(2) and abundant case law, they are judicially estopped from asserting a new claim, particularly that which is directly contradicted by their own *Complaint*.  A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), so as to "'give the defendant fair notice of what the…claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) "Furthermore, plaintiffs' [FDCPA] argument that they raise now cannot be found in the…complaint's vague FDCPA claim, and plaintiffs may not amend their pleading by raising new allegations in response to a Rule 12(b)(6) motion." *Bryant v. Wells Fargo Bank, Nat. Ass'n*, 861 F. Supp. 2d 646 - Dist. Court, North Carolina 2012, citing *Schneider v. Calif. Dep't of Corrs.,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) "This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6)." *Schneider* (citing *Harrell v. United States,* 13 F.3d 232, 236 (7th Cir.1993)).

34.   Ms. Thrul's *Response* was nothing if not consistent with her prior filings: it is replete with inaccurate statements of law and fact, for example:

a.    "[Ms. Thrul's] position was that the service did not comply with state law: [Ms. Thrul] did not live at the service address even though the process server falsely swore that she did (and at least implicitly swore that it knew that she did" (ECF 22 at pg. 2). This is a blatant misstatement of Ms. Thrul's Statement of Facts in her *Complaint*, the Va. Code Ann. § 8.01-

---

Dist. Lexis 143737, at *12-13 (W.D.N.Y. Dec. 5, 2011); *McNall v. Credit Bureau of Josephine Cnty*, 689 F. Supp. 2d 1265, 1277-78 (D. Or. 2010); *Andrews v. S. Coast Legal Services, Inc.,* 582 F. Supp. 2d 82, 88-89 (D. Mass. 2008); and *Flamm v. Sarner & Associates, P.C.,* 2002 WL 31618443 (E. D. Pa. Nov. 6, 2002).

285 *et seq*, (2007 & Supp. 2012) regarding Service of Process, and Virginia Common Law regarding fraud (false statements) which requires an actual knowledge of its falsity.

b.     "M.T.G. has provided no legal or factual basis for its claim for attorney's fees." (ECF at pg. 1). Again, this is a blatant misstatement of 15 U.S.C § 1692k, applicable case law and unsupported by the facts and record in this case.  M.T.G. sufficiently pled the facts and legal basis in its *Motion to Dismiss* [ECF 3] as well as its *Reply* [ECF 9]; otherwise Ms. Thrul would not have had to fabricate additional facts and manipulate case law in her *Opposition* [ECF 8] and *Response* [ECF 22], nor would this Court have granted M.T.G.'s dismissal, with prejudice.

c.     "M.T.G. had the burden of showing it came within the narrow exemption…it did not meet that burden." (ECF 22 at pg. 3). This is again a blatant misstatement of the facts and law.  Ms. Thrul mischaracterizes the statute – there is nothing narrow about the FDCPA's exemption for a process server as was well briefed in M.T.G's *Motion to Dismiss*.  The 'narrow exception' to the FDCPA express process server exemption are those who engage in knowingly and inherently fraudulent acts, i.e., "sewer service" or who go beyond being "mere messengers."  M.T.G.'s actions, as expressly stated within Ms. Thrul's *Complaint*, don't even imply it was not exempt from the FDCPA.  For Ms. Thrul to continue to maintain this line of argument is not only irrefutable evidence of bad faith and harassment, but also frivolous, defamatory and sanctionable. In *Cooter & Gell v. Hartmarx Corp.,* the Supreme Court noted that "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Id.* at 393, 110 S.Ct. 2447. "A complaint containing allegations unsupported by any information

obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions." *Brubaker* at 1382 n. 25 (4th Cir.1991), citing *In re Kunstler,* 914 F.2d 505, 516 (4th Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991).

d.    "The plain language of the FDCPA allows fees to be awarded to a defendant only if the action was <u>brought</u> in bad faith <u>and</u> for the purpose of harassment (emphasis in original)…M.T.G. made no effort to show either element…Second, M.T.G. did not even imply any purpose of harassment." (ECF 22 at pg. 4-5.) This is demonstrably false and again not supported by the record.  See M.T.G.'s *Reply* at ¶¶8, 9, 11, 12 and 13. [ECF 9].

e.    "It is worth noting that no Rule 11 motion has actually been made…Further no Rule 54 motion for attorney's fees is before the Court." (Response at page 5, fn 6.) This is demonstrably false and again not supported by the record.  See this Court's *sua sponte Order to Show Cause* [ECF 16]*,* M.T.G. *Motion to Dismiss* at ¶6, *Reply* at ¶12. [ECF 16, 3, and 9 respectively].

f.    "On November 19, 2015, M.T.G. filed a three-page motion to dismiss (with no separate brief)…[Ms. Thrul] respectfully submits that it is M.T.G. that has unreasonably, and plainly vexatiously, multiplied these proceedings by requesting fees." (ECF 22 at pg. 6.) Once again, Ms. Thrul maintains that she, and she alone is entitled to damages and relief from being unjustly haled into court, and that her actions are not subject to this Court's scrutiny.  Ms. Thrul, yet again, lodges false and unfounded allegations against M.T.G.

g.    "As [Ms. Thrul] set forth at the outset, there is more than a colorable claim that illegal service of process is subject to the FDCPA…There can be no showing of purposeful harassment, and [Ms. Thrul's] dismissal is just the opposite of needlessly increasing the cost

of litigation." (ECF 22 at pg. 8.)  This is demonstrably false and again not supported by the

law or the record.  As evidenced by her filings in this case, Ms. Thrul's allegations against

M.T.G. continue to be "utterly without [legal or] factual foundation…" *Chaudhry v.*

*Gallerizzo,* 174 F.3d 394, 411 (4th Cir. 1991) and should be sanctioned.

## VII.  CONCLUSION

35.    Ms. Thrul and her counsel's actions warrant Rule 11 sanctions, sanctions pursuant to 28

U.S.C. § 1927, and an award of attorney's fees and costs to M.T.G. pursuant to 15 U.S.C. §

1692k(a)(3) because this case was filed, argued and maintained in bad faith and for no legitimate

purpose than to harass.  "There comes a point where this Court should not be ignorant as judges

of what we know as men [and women]." *Rumsfeld v. Padilla*, 542 U.S. 426, 465 n. 10, 124 S.Ct.

2711, 159 L.Ed.2d 513 (2004) (Stevens, J., dissenting) (quoting *Watts v. Indiana*, 338 U.S. 49,

52, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949).

WHEREFORE, M.T.G. respectfully prays for the same consideration Ms. Thrul sought in

this Court: to hold accountable those who wrongfully haled it into court for something it did not

do, to rehabilitate its reputation, to grant its previously filed motions and award its attorney's

fees and costs for having to defend this baseless, and now defamatory cause of action brought

and maintained without any foundation in fact or law and in express violation of the applicable

statutes, and maintained for no other reason than in bad faith and to harass, and to impose

sanctions as this Court may deem honorable and just against Ms. Thrul and her counsel for their

conduct as outlined herein.

Respectfully Submitted,

M.T.G. PROCESS SERVERS, LLC
By: _____/s/__Richard J. Knapp_____
                Of Counsel

Richard J. Knapp [V.S.B. 15834]
Richard J. Knapp, P.C.
2800 Patterson Avenue, Suite 101
Richmond, Virginia 23221
Telephone: 804-377-8848, ext. 3#
Facsimile:  804-377-8851
Email: Richard@rknappesq.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 11th, 201l, I electronically filed the foregoing document using the Court's CM/ECF system, which will send notification of such filing to:

Donald E. Morris
Law Office Anthony K. Jones
3957 Westerre Parkway, Suite 320
Richmond, VA 23233
Tel:     804-934-2682
Fax:     312-894-3548
Email: Donald.morris@cna.com

Counsel for Landmark Property Services, Inc.

James L. Hoyle
Kalabaugh Pfund & Messersmith, PC
901 Moorefield Park Drive, Suite 200
Richmond, VA 23236
Tel:     804-521-6446
Fax:     804-320-6312
Email: lee.hoyle@kpmlaw.com

Counsel for Renaissance Mayfair, LP

Matthew J. Erausquin, VSB #65434
Casey S. Nash, VSB # 84261
Leonard A. Bennett, VSB #37523
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     703-273-7770
Fax:     888-892-3512
Email: matt@clalegal.com
            casey@clalegal.com

_____/s/__Richard J. Knapp_____
Richard J. Knapp [V.S.B. 15834]
Richard J. Knapp, P.C.
2800 Patterson Avenue, Suite 101
Richmond, Virginia 23221
Telephone: 804-377-8848, ext. 3#
Facsimile:  804-377-8851
Email: Richard@rknappesq.com