UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

SARAH THRUL f/k/a SARAH TEWALT,

    Plaintiff,

v.                                                                          Civil Action No. 3:15-cv-623

LANDMARK PROPERTY SERVICES, INC., *et al.*

    Defendants.

## **PLAINTIFF'S REPLY MEMORANDUM REGARDING ORDER TO SHOW CAUSE**

In reply to Defendant's Response regarding the Court's Order to Show Cause (Dkt. No. 16), she states as follows:

### OVERVIEW

This case was not filed out of an attorney's ambition to prosecute a new, creative or technical claim. It was brought by a consumer who had been subjected to a public civil judgment by the defendants over a debt she did not owe and by service at a location where she did not live. Plaintiff filed this action initially alleging that Defendant M.T.G. Process Servers, LLC ("MTG") was a "debt collector" subject to the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Plaintiff's contention was that the Defendant would not have been subject to the narrow affirmative exclusion of processing serving because it did more than that exemption would permit: (1.) MTG posted service on the door of a place where Ms. Thrul had never lived; (2.) Defendant acknowledges that it provided an 'under oath' affidavit that it knew this was her address; but (3.) MTG agrees that this affidavit was false because it "'had no actual information as to whether the address that it used when posting service was

genuinely Plaintiff's place of abode'[.]" (Dkt. No. 24 at 14). Plaintiff has already addressed this 'false service' fact pattern and the good faith of an allegation that the service of process exemption does not apply. (Dkt. 22, in passim). She does not repeat this argument herein.

### MTG HAS DEVOTED MORE ATTORNEYS FEES AND ARGUMENT PAGES THAN IT DID IN OPPOSING THE ACTUAL COMPLAINT

As ordered by the Court, Plaintiff has properly defended the initial filing of this action and explained its basis. Yet now MTG's criticism is less as to the original Complaint and more to the mere fact that Plaintiff is explaining and defending that original claim. MTG may feel offended at having been sued and may not like the arguments made in these exchanges, but there is nothing in MTG's argument that rebuts the substantive arguments explained in Plaintiff's response. MTG has not provided a fair basis for any claim for attorney's fees or sanctions. Instead, its 20-page brief is built on inflammatory and conclusory characterizations. For example, MTG repeatedly uses variations of the word false (22 times), fraud (21 times), harass (21 times), and defamatory (12 times). It claims "new allegations that were contradictory and mutually exclusive" in Ms. Thrul's 6-page memorandum which explained why MTG's motion to dismiss should be denied as moot. (Doc. No. 8.) MTG repeatedly intones the term fraud, even after admitting that plaintiff did not allege fraud as to MTG. Doc. No. 9 at 2.

MTG had filed a three-page motion to dismiss the allegations of the complaint. (Doc. No. 3.) MTG's motion did not substantively address the extensive case law defining the extent and applicability of the FDCPA's process server exemption, or a defendant's to affirmatively prove the exemption. Still, Ms. Thrul dismissed for unrelated reasons, rather than litigate over MTG's error.[1] The next day, MTG filed a 5-page reply still relying on its misperception of the text of the

---

[1] During the pendency of this case, Plaintiff sought and obtained vacatur of the state court judgment based on improper service and separately reached conventional settlements with the co-defendants.

FDCPA.[2] Ms. Thrul filed a focused 10 page brief in response to the Court's request. Now MTG has filed a 20-page opposition, claiming the invited response to the Court itself is also a basis for sanctions. Even if Plaintiff's counsel erred, they immediately sought to address the Defendant's argument by dismissing the MTG claim with an explanation of its previous justification, and then permitted the undersigned to reach out to MTG's lawyer in hopes of addressing his and the Court's practical concerns. MTG cannot fairly contend that the ongoing conflict in these exchanges is itself vexatious given Defendant's apparent ambition to pursue these merit disputes for reasons entirely unrelated to attorneys' fees.

### A SANCTIONS ORDER REMAINS AN UNUSUAL, UNNECCESSARY AND HARSH RESULT

In her response, Plaintiff addressed the three potential bases for attorneys fees or other sanction raised by the Court – 15 U.S.C. § 1692k(a)(3)[3], 28 U.S.C. § 1927[4] and Fed. R. Civ. P. 11.[5] In its Reply, Defendant's citations largely support Plaintiff's own explanations – such sanctions are a high bar requiring more than that the Plaintiff's claim was weak. At their high bar, such sanctions are not appropriate.

MTG incorrectly suggests that the post-Complaint filings were so vexatious as to support sanctions under 28 U.S.C. § 1927. (Dkt. No. 24, 3, 7-8). And in fact, MTG does not and cannot answer Plaintiff's explanation that § 1927 does not govern the initial filing of an action. Instead, it addressed the improper continuation or multiplication of the litigation. Defendant's explanation as to § 1927 is unclear, as it seems to be nearly identical to the general "the Complaint was in bad faith" assertion that drives the remainder of its arguments. However,

---

[2] The FDCPA is a "'comprehensive and reticulated statutory scheme' *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 233 (4th Cir.2007)." Russell v. Absolute Collection Services, Inc., 763 F.3d 385, 392 (4th Cir. 2014);
[3] Dkt. No. 22 at 3-6.
[4] *Id.* at 6-7.
[5] *Id.* at 8-9.

3

MTG seems to suggest that Plaintiff's mere response to the Court's Order and these related filings themselves were vexatious, asserting as they do that a good faith argument can be made that the process service exception does not apply to a false claim of service. Such contention must fail. Plaintiff is not only permitted to explain the underlying basis for her (and her counsel's) belief that a viable FDCPA claim exists for false service, but in fact Plaintiff was ordered to make such explanation.

MTG's brief considers entitlement to attorney's fees under Fed. R. Civ. P. Rule 11(b), which does not allow such an award in the absence of compliance with Rule 11(c)(2).[6] MTG's discussion of the Rule is otherwise unexceptionable, and supports plaintiff's position that sanctions are not appropriate. MTG does not dispute the alleged facts: MTG posted service on the door of a place where Ms. Thrul had never lived, and swore that it believed it to be her regular abode even though it could easily be ascertained that it was not. Even MTG recognizes, at Part VII, that if there is a tenable legal argument that such service is not proper legal service, the exemption is avoided and the FDCPA could apply.

Payment of attorney's fees to an opposing party under Rule 11 requires a motion by a party. *Duggan v. Everd*, 81 F.3d 149 (4th Cir. 1996); *UBS Fin. Servs., Inc. v. Childress*, No. 1:12CV00074, 2013 WL 5786444, at *4 (W.D. Va. Oct. 28, 2013) ("Because the Rule 11 sanctions here are imposed *sua sponte* and not by a motion, I am not able to direct payment of the opposing party's attorney's fees." (citing Fed. R. Civ. P. 11(c)(4)); *see also* 560 F.3d 292, 298 (5th Cir. 2009) (where parties filed Rule 11 motion but did not comply with safe harbor provisions, sanction was on court's own initiative and would not support award of attorney's fees); *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 926 (7th Cir. 2004) (if sanction is not imposed as a result of motion by party but instead on court's initiative,

---

[6] As the Court is aware, because MTG did not comply with that predicate, this Rule 11 vehicle is inappropriate.

attorney fees cannot be imposed); *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.2d 52, 57 (2d Cir. 2000) (attorneys' fees may be awarded only pursuant to motion; such fees may not be awarded by court on its own initiative). Any motions for sanctions under Rule 11, including the payment of attorney's fees, must be made separately from other motions. Fed. R. Civ. P. 11(c)(2). It must also allow the offending party the benefit of Rule 11's safe harbor provision. *Id.* In this case, the Court issued the Show Cause Order *sua sponte*. (Dkt. No. 16). The only motion that MTG has made in the case was its Motion for Dismissal for Failure to State a Claim Upon Which Relief Can be Granted. (Dkt. No. 3). Because MTG has not filed the requisite motion under Rule 11, it is not entitled to an award of attorney's fees as a Rule 11 sanction.

**MTG's BELIEF THAT IT HAS BEEN "DEFAMED" IS NOT A BASIS FOR SANCTIONS**

MTG complains throughout of what it asserts are "false and defamatory" statements. (Dkt. No. 24, Parts II, III, IV, VIII (b), (c)). But § 1927 does not provide a remedy for "defamatory" statements made in the course of litigation. "[I]t is well-settled that words spoken or written in a judicial or quasi-judicial proceeding are absolutely privileged when relevant to the subject matter of the proceeding," ( citing *Katz v. Odin, Feldman & Pittleman, P.C.,* 332 F.Supp.2d 909, 918–919 (E.D.Va.2004). Mercer v. Fairfax Cty. Child Protective Servs., 2015 WL 5037636, at *6 (E.D. Va. Aug. 25, 2015). Nor do Rule 11 or 15 U.S.C. §1692k(a)(3), which MTG confusedly conflates throughout its brief. Further, the dispute in this matter is not really factual. Defendant concedes the core elements of Plaintiff's allegation – MTG served an address that was not Plaintiff's abode, acknowledge that it did not know if it was her abode, and yet swore and filed an affidavit of service testifying otherwise under oath. Neither party disputes those facts. Where the difference lies is what these facts can legally mean under the FDCPA.

Plaintiff's assertion of a legal argument to which Defendant disagrees is not defamatory even if the Plaintiff's legal argument was wrong.

### THE PLEADINGS DO NOT SHOW THAT PLAINTIFF FILED IN BAD FAITH

In Section VIII of its brief, MTG offers what it contends is the "evidence of bad faith and harassment warranting sanctions", including attorneys fees. (Dkt. No. 24, at 10-20). Most of the criticisms levied therein are either addressed in Plaintiff's opening brief or are simply insult or attack on Plaintiff's counsel. At page 11 (¶¶20, 21), MTG complains that, "Ms. Thrul not only haled M.T.G. into court despite the express language in the FDCPA and VCPA statutes that excludes process servers, she then repeatedly, without any factual or legal justification, falsely accuses them of perpetrating a fraud upon the court." Plaintiff has previously addressed this contention. She – her counsel as well as the undersigned – fairly believe that the FDCPA exemption does not shelter a process server who does not make actual service without some misconduct (such as a false service affidavit). And the Court may or may not have disagreed. But other courts have agreed and it cannot be fairly argued that Plaintiff's allegation was so unreasonable as to constitute bad faith. Similarly, MTG's criticism of the Virginia Consumer Protection Act ("VCPA"), Va. Code, §59.1-196, et seq., count – that the VCPA does not govern it because it was otherwise regulated by the federal Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq., fully contradicts MTG's "bad faith" allegation as one of these two provisions would apply. Even under MTG's view of the VCPA exemption, it was to be excluded from VCPA coverage merely because its conduct was governed by the FDCPA. But to the extent MTG were correct in its assertion of the affirmative process service exemption, then the VCPA

would apply as the FDCPA (and Consumer Credit Protection Act) would not regulate its conduct.[7]

Ms. Thrul did not raise any "new" allegation. She could recover under any legal theory that is supported by the facts alleged. Fed. R. Civ. P. Rule 54(c); Johnson v. City of Shelby, Mississippi, 574 U.S. __ , 135 S. Ct. 346, 347, 2014 WL 5798626 (U.S. Nov. 10, 2014) (party need only "state[] simply, concisely, and directly events that, they alleged, entitled them to damages."). The facts and legal theories were the same throughout: MTG posted service on the door of a place where Ms. Thrul had never lived, and swore that it was her residence even though it could easily be ascertained that it was not. Such service is not proper legal service, voids the FDCPA's process server exemption and violates the FDCPA. Ms. Thruls' legal theory is supported by the text of the FDCPA – a strict liability statute[8] -- as well as case law.

MTG's brief claims several times that Ms. Thrul accused MTG of "fraud upon the court." (*See e.g.* Dkt. No. 11-11, ¶¶22-23). But Ms. Thrul's claim was not that MTG committed "fraud upon the court", a more egregious act than alleged in this case. Ramsay v. Sanibel & Lancaster Ins., LLC, 2015 WL 3830891, at *4 (E.D. Va. June 19, 2015), citing Fox ex rel. Fox v. Elk Run Coal Co., 739 F.3d 131, 136 (4th Cir. 2014) (citations omitted). Instead, she sought and obtained vacatur of the state court default judgment because its service was improper and the state court lacked jurisdiction – the judgment was void. The undersigned does not otherwise understand MTG's point.

Defendant also complains that one of the factual allegations of the Complaint was that MTG included Ms. Thrul's social security number in a document posted upon the door it served.

---

[7] MTG does not assert alternate arguments to dispute application of the VCPA. Accordingly, Plaintiff does not delve more deeply into other theoretical defenses.

[8] As the Court is aware, the FDCPA is a "strict liability" statute. Intent to violate the law is irrelevant. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 584 (2010); Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012).

MTG denies having done so. However, while the social security number was not included within the actual Summons, in the state court file, a separate document, attached hereto as Exhibit "A", was attached to the served pleading and di contain the Plaintiff's SSN (redacted herein). Still, if the Complaint was incorrect in inclusion of that single fact, the mistake occurred despite Plaintiff having had a good faith basis to believe and allege as she did. MTG suggests that Ms. Thrul or her counsel possessed knowledge of events equal to its own. But the Plaintiff only learned of the judgment MTG's actions and service affidavit facilitated immediately before the filing of the present action. And neither plaintiff or her counsel knew more as to how that judgment occurred or how service was accomplished other than from the documents in the court file – the summons and its attachments.

Beginning on page 12, ¶26 and through the remainder of Section VIII, MTG returns to its general defense of its character mixed with its refrain that it did not knowingly serve the Plaintiff at an improper address. Both points have been addressed above and in Plaintiff's opening response brief. MTG does not understand the basis for Plaintiff's allegation of the misconduct avoiding the FDCPA's service of process exemption. Defendant and Plaintiff both agree that Defendant had no knowledge or reason to believe that the place of service was Ms. Thrul's residence and place of abode. But Plaintiff is not contending that MTG knew that Thrul resided elsewhere. Instead, her point is that MTG at least knew *that it did not know*. And yet it signed under oath and filed an affidavit that appears to state otherwise, confirming that it served the papers at what was the front door of Ms. Thrul's place of abode. Whether because of the false affidavit of service (swearing knowledge where there was none) or because of the placement of the service document at a location that MTG had no knowledge belonged to the Plaintiff, the

various cases cited by Plaintiff in her opening brief provide a good faith basis to have alleged that the service exemption did not apply.

**MTG'S NEW REQUEST FOR ATTORNEYS FEES OR COSTS IS IMPROPER**

MTG's brief repeatedly (at least five times) requests an award of costs – even though it incurred no taxable costs. Doc. No. 24-1 ¶ 10. Nor did it "file a bill of costs as provided in 28 U.S.C. §§ 1920 and 1924 within eleven (11) days from the entry of judgment" as required by Local Civil Rule 54(D).

MTG also now asks for attorney's fees – piling on in the hope that that the Court will award such without an actual Rule 54 motion and accompanying proofs. First, nearly all of the Defendant's work – and certainly attorneys fees – have come after its initial 3-page motion and – most critically – after the undersigned first learned this case and the pending issue. Mr. Bennett reached out directly to M.T.G.'s counsel to attempt to mediate the attorneys fee question but was told by Defendant's counsel, "I am unable to supply [an attorneys fee amount] at this time. Our client's attorney's fees is not the only issue for determination before the District Court." (Dkt. No. 22, n.8.)

As the Court has previously explained, in order to receive attorney's fees, counsel must submit evidence of the hourly rate and time expended, as well as an explanation for how and for what such time was expended. MTG's counsel's *ipse dixit* that he spent 18 hours at $350 per hour does not meet a Rule 54 burden. He must "submit evidence supporting the hours worked," and exercise "billing judgment" with respect to hours worked. Hensley v. Eckerhart, 461 U.S. 424, 433–34 (1983). "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." Id. at 434 (emphasis in original). Mr. Knapp produces no such evidence.

There are of course other elements that MTG does not meet. Route Triple Seven Ltd. P'ship v. Total Hockey, Inc., WL 5123302 (E.D. Va. Aug. 28, 2015). The party seeking fees "must produce satisfactory specific evidence of the prevailing market rates in the relevant community." Id. at *8 (internal quotes omitted). "Such evidence consists of affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Id. at *8 (internal quotes omitted). MTG produced no such evidence. Further, MTG's fee application would be properly denied as it lacks any explanation or justification for the hours claimed. As the Fourth Circuit has previously offered,

> The fee affidavit in the record makes clear that Wachovia's counsel did nothing to "allocate the time spent on each claim" or to "describe the work" it performed in a way that could have assisted the court in "determining the reasonableness of the fee request." Confronting these weaknesses in the fee affidavit, the district acted within its discretion in denying the fee award.

Morris v. Wachovia Sec., Inc., 448 F.3d 268, 283 (4th Cir. 2006).

## CONCLUSION

Plaintiff respectfully requests that no sanctions be awarded.

Respectfully submitted,
**SARAH THRUL f/k/a SARAH TEWALT,**

By: _____/s/_____
Of Counsel

Leonard A. Bennett, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 27th day of January, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to all counsel of record.

                                    /s/
                                Leonard A. Bennett, VSB No. 37523
                                CONSUMER LITIGATION ASSOCIATES, P.C.
                                763 J. Clyde Morris Blvd., Suite 1-A
                                Newport News, VA 23601
                                Tel: (757) 930-3660
                                Fax: (757) 930-3662
                                Email: lenbennett@clalegal.com